UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HUMBEIRO CARVAJAL-MONTOYA,<br><br>                   Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>                   Respondent. | 12 Civ. 0764 (LBS)<br>07 Cr. 441 (LBS)<br><br>MEMORANDUM &<br>ORDER |

SAND, J.

    Pursuant to a pro se 28 U.S.C. § 2255 petition, Humbeiro Carvajal-Montoya seeks to vacate the 135-month sentence imposed by this Court for conspiracy to import heroin into the United States. Mot. to Vacate, Set Aside or Correct a Sentence Pursuant to 28 USC § 2255 ("Carvajal-Montoya Brief") Ex. E, at 17. For the reasons that follow, Carvajal-Montoya's petition is denied.

I.    BACKGROUND

    Carvajal-Montoya was charged with conspiracy to import heroin in violation of 21 U.S.C. § 963. On August 20, 2009, Carvajal-Montoya pled guilty, without the benefit of a plea agreement, before Magistrate Judge James C. Francis IV. Carvajal-Montoya Br. Ex. D, at 4. Prior to Carvajal-Montoya's plea, the government provided Carvajal-Montoya with a letter pursuant to United States v. Pimentel, 932 F. 2d 1029 (2d Cir. 1991), which contained the government's Sentencing Guidelines range estimate of 188 to 235 months' imprisonment. Carvajal-Montoya Br. Ex. A, at 2. The estimate was based on the following: the type of drug (heroin); the amount involved (between 10 and 30 kilograms); an increase of three offense levels based on the government's contention that Carvajal-Montoya acted as a manager or supervisor; and a reduction of three levels presumptively based on Carvajal-Montoya's acceptance of responsibility and his timely notice of his intention to plead guilty. Id. Based on the Sentencing Guidelines' arithmetic of punishment, Carvajal-Montoya's applicable offense level

1

was 36. Id. Finding that Carvajal-Montoya's allocution was voluntary and knowing, Judge Francis recommended that this Court accept Carvajal-Montoya's guilty plea. Carvajal-Montoya Br. Ex. D, at 11.

Thereafter, Elizabeth E. Macedonio, Carvajal-Montoya's counsel, held discussions with the government as to the applicability of the safety-valve provision set forth in 18 U.S.C. § 3553(f). Under this provision, a district court may impose sentences below the statutory mandatory minimums set forth in, inter alia, 21 U.S.C. § 963 if (1) the defendant does not have more than one criminal history point; (2) the defendant did not use or threaten violence and did not possess a dangerous weapon in connection with the offense; (3) the offense did not result in death or serious injury; (4) the defendant was neither an organizer nor a leader, manager, or supervisor of the offense and was not involved in a continuing criminal enterprise; and (5) the defendant was forthcoming with information and evidence related to the offense. 18 U.S.C. § 3553(f); see also United States v. Holguin, 436 F.3d 111, 115 (2d Cir. 2006).

Based on information it had received from Carvajal-Montoya's co-defendants — some of whom had qualified for the safety-valve provision but none of whom were cooperating witnesses — the government believed that Carvajal-Montoya had "recruited others to join in the conspiracy and thus had occupied a position of leadership within the conspiracy." Carvajal-Montoya Br. Ex. C, at 3–4. Consequently, the government's position was that Carvajal-Montoya was ineligible for sentencing under the safety-valve provision. We note that no other 18 U.S.C. § 3553(f) disqualification applied.

In an affidavit prepared in connection with the current motion, Macedonio states that Carvajal-Montoya "initially indicated that he wished to litigate the issue of his role in the conspiracy and his eligibility for relief under the 'safety valve' statute." Government's Mem. in Opp'n to Def.'s Mot. to Vacate ("Gov't Br.") Ex. 2, at 3. He soon changed his mind, however, and did so, it seems, for two interrelated reasons — a bargain and a tacit threat.

First, the bargain. The government agreed to forego the U.S.S.G § 3B1.1(b) three-point sentence enhancement for Carvajal-Montoya's alleged managerial or supervisory role in the offense. The government also agreed to a three-point reduction for acceptance of responsibility pursuant to U.S.S.G § 3E1.1. In return, Carvajal-Montoya agreed that the "statutory minimum applies, that he will not seek to qualify for relief from the statutory minimum sentence provision pursuant to" the safety-valve provision. Carvajal-Montoya Br. Ex. C, at 4.

The tacit threat was this: Macedonio advised Carvajal-Montoya that should he chose to litigate the nature of his role, he would open himself up to a further two-point sentence enhancement for obstruction of justice pursuant, this Court presumes, to U.S.S.G § 3C1.1. Gov't Br. Ex. 2, at 4. This threat was never made explicit; indeed, the government is at pains to emphasize that "it was open to receiving a safety-valve proffer from Carvajal-Montoya, if he so chose." Gov't Br. 5. Yet Macedonio, likely in good faith, was convinced that if Carvajal-Montoya pursued this line of litigation, the government would seek the additional enhancement. Gov't Br. Ex. 2, at 4.

On June 17, 2010, Carvajal-Montoya met with Macedonio, who "explained the terms of the post-plea agreement . . . and recommended to him that he accept it." Id. Ex. 2, at 5. On June 18, 2012, Carvajal-Montoya signed the post-plea agreement ("Agreement"). Carvajal-Montoya Br. Ex. C, at 4. As a result of the bargain, Carvajal-Montoya's applicable offense level was reduced from 36 to 33 and his estimated sentence range was reduced to 135–168 months' imprisonment. Id. On June 23, 2010, before this Court, Carvajal-Montoya stated that he entered into the Agreement knowingly and voluntarily and that no extra-contractual promises were made to him. Carvajal-Montoya Br. Ex. E, at 5. This Court sentenced Carvajal-Montoya to 135 months' imprisonment. Id. Ex. E, at 17. As part of the Agreement, Carvajal-Montoya agreed that he "would not challenge subsequently, by direct appeal or otherwise, a sentence that was within or below the stipulated guideline range." Id. Ex. E, at 5–6.

Carvajal-Montoya's judgment of conviction was entered on June 28, 2010. In April 2011, he appealed pro se to the Second Circuit, arguing that (1) Macedonio was ineffective for having failed to litigate Carvajal-Montoya's qualification for the safety-valve exception; (2) that this Court abused its discretion by failing to find that Carvajal-Montoya's pre-extradition conditions of detention in Colombia justified a departure from the Sentencing Guidelines; and (3) that this Court abused its discretion by failing to reduce Carvajal-Montoya's sentence in light of his likely post-release deportation. On August 2, 2011, the Second Circuit dismissed Carvajal-Montoya's appeal as meritless. Gov't Br. 10–13.

II. DISCUSSION

  a. Applicable Law

Relief under 28 U.S.C. § 2255 is available only "for constitutional error, a lack of jurisdiction, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." Graziano v. United States, 83 F.3d 587, 589–90 (2d Cir. 1996) (internal quotation marks and citation omitted).

Section 2255 provides that a court shall hold an evidentiary hearing "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. Where, as here, "the same judge presided over the proceedings leading to conviction and the habeas petition, a judge's decision [not to hold a hearing] is entitled to special deference." Bilzerian v. United States, No. 96-2920, 1997 U.S. App. LEXIS 26937, at *9–10 (2d Cir. Sept. 30, 1997); see also Pham v. United States, 317 F.3d 178, 184 (2d Cir. 2003) (noting that a district court may decide disputed facts on the papers).

An ineffective assistance of counsel claim is evaluated under the two-part test first enunciated in Strickland v. Washington, 466 U.S. 668 (1984). To prevail, a petitioner must show both (1) that his counsel's representation "fell below an objective standard of reasonableness," where reasonableness is evaluated "under prevailing professional norms" and (2) that "there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 687–88, 694.

4

b.    Carvajal-Montoya's Claims

Carvajal-Montoya's current petition raises three related ineffective assistance of counsel claims: that Macedonio (1) erred by advising him to enter into the Agreement with the government; (2) erred by failing to investigate his actual role in the drug conspiracy; and (3) erred by advising him to "waive his right to appeal, relinquish his right to the safety-valve provision, and stipulate to a guideline range in the" Agreement. Carvajal-Montoya Br. 13–17. These claims are substantially identical and boil down to the argument that Macedonio was remiss in advising him not to litigate his role in the conspiracy and to sign the Agreement, as a result of which Carvajal-Montoya ceded the right to argue his eligibility under the safety-valve provision. Carvajal-Montoya's arguments are without merit.

Macedonio's representation did not fall below an objective standard of reasonableness. She relayed to the government Carvajal-Montoya's initial wish to litigate his role and his qualification for relief under the safety-valve statute; she negotiated the Agreement; she explained to Carvajal-Montoya her opinion that further litigation might subject Carvajal-Montoya to additional charges for obstruction of justice; she met with Carvajal-Montoya multiple times to discuss his sentencing and the term of the Agreement; and, based upon the information at her disposal — including discussions with co-counsel and participation in co-defendant meetings with the government — she recommended that he accept the Agreement. Gov't Br. Ex. 2, at 4. As is required, she "advocat[ed] the defendant's cause . . . consult[ed] with the defendant on important decisions and . . . ke[pt] the defendant informed." Strickland, 466 U.S. at 688.

Most importantly, Macedonio's advice that Carvajal-Montoya refrain from further litigation cannot be said to be objectively unreasonable. As Judge Scheindlin noted in a substantially identical case, it is clear that by "entering into the Agreement, [the defendant] avoided a potentially devastating Fatico hearing and secured significant concessions from the Government." Lendof v. United States, OO Civ. 4312, 2001 U.S. Dist. LEXIS 3822, at *19 (S.D.N.Y. Apr. 2, 2001). The government agreed to forego the three-point leadership enhancement and

5

agreed to a three-point reduction for acceptance of responsibility. As a consequence, Carvajal-Montoya's base offense level was reduced from 36 to 33.

Had Carvajal-Montoya litigated his role the conspiracy, it is likely that, at the very least, the government would not have agreed to the three-point reduction for acceptance of responsibility. Moreover, had testimony at a Fatico hearing demonstrated he did, as the government alleged, "recruit others to join the conspiracy," Carvajal-Montoya Br. Ex. C, at 3–4, the government would have pressed for the foregone leadership enhancement. The threshold for this, as Macedonio likely knew, is very low: the Second Circuit has held that recruiting a single drug-courier is enough to support the enhancement. See United States v. Garcia, 413 F.3d 201, 223 (2d Cir. 2005).

The government might also have sought an obstruction of justice enhancement under U.S.S.G § 3C1.1. This Court is troubled by this. The comments to this provision of the Sentencing Guidelines make it clear that this "provision is not intended to punish a defendant for the exercise of a constitutional right. A defendant's denial of guilt (other than a denial of guilt under oath that constitutes perjury) [or] refusal to admit guilt . . . is not the basis for application of this provision." U.S. Sentencing Guidelines Manual § 3C1.1 cmt. n.2 (2011). In other words, a defendant's choice to challenge a prosecutor's assertion should not, on its own, open him or her up to an obstruction of justice enhancement. Surely a defendant may not perjure herself. See United State v. Dunnighan, 507 U.S. 87, 96 (1993) (repudiating the argument that this sentence enhancement burdens an perjurer's right to testify). But challenging the government's evidence is not necessarily perjury, even if a jury or judge ultimately hands the victory to the government. Put differently, it should not be the case that "[e]ven truthful defendants risk perjury charges [and obstruction of justice enhancements] by contradicting the government's evidence." Alexandra Natapoff, Speechless: The Silencing of Criminal Defendants, 80 N.Y.U. L. Rev. 1449, 1460 (2005). Yet this appears to be a concern among some defense attorneys. Id.  In light of this, this

6

Court finds that Macedonio's counsel regarding the possibility of an enhancement for obstruction of justice was not unreasonable.

It is certainly true that Carvajal-Montoya might well have been able to prove that he was not a leader and was, therefore, eligible for the safety-valve provision. But he — not Macedonio — made the calculated and informed decision to forego litigation and sign the Agreement. Because this Court finds that Carvajal-Montoya has failed to establish the first part of the Strickland test, we need not assess whether he has satisfied the second part. Strickland, 466 U.S. at 699. Carvajal-Montoya's ineffective assistance of counsel claims are rejected as meritless.

III. CONCLUSION

For the foregoing reasons, Carvajal-Montoya's section 2255 motion is denied. The remaining issue is whether to grant a Certificate of Appealability ("COA"). For a COA to issue, a petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A "substantial showing" does not require a petitioner to demonstrate that he would prevail on the merits, but merely that reasonable jurists could debate whether "the petition should have been resolved in a different manner or that the issue presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983) (internal quotation marks and citations omitted)). Carvajal-Montoya has made no such showing; no COA shall issue.

SO ORDERED.

August 27, 2012
New York, NY

_____
U.S.D.J.

7